ALASKA AIRLINES, INC.; Qwest Commuter Corp.; Westair Incorporated, Plaintiffs–Appellees,

v.

CITY OF LONG BEACH; Long Beach City Council; Evan Braude; Wallace Edgerton, et al.; Jan Hall; Thomas J. Clark; Ernie Kell; James R. Wilson; Eunice Sato; Ed Tuttle; Warren Harwood; Ray Grabinski; Marc A. Wilder, Defendants–Appellants.

LONG BEACH UNIFIED SCHOOL DISTRICT; Long Beach Hugh, Inc., Defendants–Intervenors,

v.

PACIFIC SOUTHWEST AIRLINES, et al.; Aircal Inc.; America West Airlines; United Air Lines; American Airlines, Inc.; Ozark Airlines, Inc.; Wings West Airlines, Inc.; Federal Express Corporation; Airserv; Delta Air Lines, Inc.; Continental Air Lines, Inc., Plaintiffs–Intervenors–Appellees.

ALASKA AIRLINES, INC.; Qwest Commuter Corp.; Westair Incorporated, Plaintiffs–Appellees,

and

Pacific Southwest Airlines, Inc.; Federal Express Corporation; Airserv; Aircal Inc.; United Air Lines; American Airlines, Inc.; Ozark Airlines, Inc.; Wings West Airlines, Inc., aka American Eagle; America West Airlines; Delta Air Lines, Inc.; Continental Air Lines, Inc., Plaintiffs–Intervenors–Appellees,

v.

CITY OF LONG BEACH; Long Beach City Council, and its members, Defendants–Appellants.

Nos. 88–6745, 89–55278.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1989.

Submission Deferred Aug. 20, 1990.

Re–Argued and Submitted Oct. 9, 1990.

Decided Oct. 24, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 9, 1992.

Dennis, Shafer, Young & Wish, Alan M. Shafer, Richard P. Towne, Los Angeles, Cal., for plaintiff-appellee Alaska Airlines, Inc.

Sheppard, Mullin, Richter & Hampton, Don T. Hibner, Jr., Mark Riera, Los Angeles, Cal., for plaintiff-in-intervention, American Airlines, Inc.

Rintala, Smoot, Jaenicke & Brunswick, J. Larson Jaenicke, Los Angeles, Cal., for plaintiff-in-intervention, Continental Airlines, Inc.

Preston, Thorgrimson, Ellis & Holman, Thomas G. Allison, Paul J. Lawrence, Seattle, Wash., for plaintiff-in-intervention, Delta Air Lines, Inc.

Graham & James, Leo J. Vander Lans, Los Angeles, Cal., for plaintiff-in-intervention, Federal Exp. Corp.

Belcher, Henzie & Biegenzahn, James M. Derr, Los Angeles, Cal., for plaintiff-in-intervention, Trans World Airlines, Inc.

Paul, Hastings, Janofsky & Walker, Robert S. Span, Judith L. Meadow, Santa Monica, Cal., for plaintiff-in-intervention, United Air Lines, Inc.

Donovan, Leisure Newton & Irvine, Terry S. Sterling, Los Angeles, Cal., for plaintiff-in-intervention, U.S. Air, Inc.

Latham & Watkins, John J. Lyons, Kirk A. Wilkinson, Los Angeles, Cal., Winthrop, Stimson, Putnam & Roberts, John E. Gillick, Washington, D.C., for plaintiff-in-intervention America West Airlines, Inc.

Lee L. Blackman, McDermott, Will & Emery, Los Angeles, Cal., Roger P. Freeman, Deputy City Atty., Long Beach, Cal., for the defendants-appellants.

Argued Sept. 15, 1989, before SCHROEDER, BOOCHEVER and BEEZER, Circuit Judges.

Reargued Oct. 9, 1990, before TANG, SCHROEDER and BEEZER, Circuit Judges.

PER CURIAM:

## I. INTRODUCTION

We review a permanent injunction following ten years of litigation over efforts by the City of Long Beach to regulate noise emanating from aircraft using the Long Beach Municipal Airport. The litigation has been waged between the city, which owns and operates the airport, and various commercial airline passenger carriers who contended that the city's ordinances unfairly limit their flights. The city here appeals the district court's judgment permanently enjoining operation of the city's most recent ordinance and preventing the city from reducing the number of permitted daily carrier flights below 40. The district court ruled that the ordinance was unlawful on several grounds, including the following: (1) the ability of the city to regulate noise at the airport was preempted by federal law; (2) the flight and noise limitations impermissibly burdened interstate commerce; (3) several of the provisions were arbitrary, capricious, or not rationally related to legitimate governmental

concerns; (4) the ordinance discriminated against air carriers in violation of equal protection; and (5) the ordinance denied procedural due process because it authorized reductions in flights without opportunity for a hearing. The district court also ruled that the city had impermissibly denied all access to a class of commuter airlines under a preliminary injunction issued during the pendency of the litigation. It held that the city had erroneously interpreted that injunction as requiring such exclusion, that the original ordinance similarly did not require such exclusion, and that such exclusion impermissibly burdened interstate commerce.

The ordinance contains a nonseverability clause expressly providing that if one provision of the ordinance is held to be unlawful, the entire ordinance will be without force and effect. Thus, if we agree with any of the district court's grounds for its injunction, we must affirm. Because we agree with the district court that the provisions of the ordinance denying opportunity for notice and hearing in connection with flight reductions violate principles of due process, we affirm the injunction. We also affirm the district court's ruling that the preliminary injunction did not authorize the city to exclude the commuters. In order to avoid unnecessary future litigation, we consider in this opinion the principal other grounds upon which the district court's injunction rests, and we conclude that the district court erroneously relied upon them.

## II. BACKGROUND

The airport began operations in 1923 on city property surrounded mainly by residential housing. Throughout its history, the airport has had heavy military and general aviation usage. In 1981, the city council adopted its first noise control ordinance, the "Aircraft Noise Control Regulation" which limited air carrier flights to fifteen per day and required carriers to use quieter equipment.

This litigation was filed on June 23, 1983 by Alaska Airlines. Other commercial airlines have subsequently intervened. In December of 1983, the district court ruled, on the record before it, that there was an insufficient basis to support the fifteen-flight restriction. It entered a preliminary injunction prohibiting the city from reducing the number of daily carrier flights below eighteen.

Following entry of the preliminary injunction, the city undertook an extensive study of the noise situation at the airport, funded under 14 C.F.R. §§ 150.1–150.35 by funds from the Federal Aviation Administration. The study was called the "Part 150 Task Force Study." The federal regulations call for development of a "noise compatibility program" ("NCP"). The city submitted its final NCP and implementing ordinance to the FAA for review in July of 1986. Apparently they still have not received FAA approval. This appeal does not directly involve issues concerning the FAA regulations.

In the meantime, prior to completion of the report based upon the Task Force's preliminary recommendations, and apparently in part spurred by numerous noise-related nuisance and inverse condemnation claims filed by residents affected by airport operations, the city went forward with preparation and adoption of an ordinance. The principal elements of the ordinance included a limit of 65 decibels on the Community Noise Equivalent Level ("CNEL"). In addition it limited the number of air carrier jet flights and set noise limits for individual aircraft. The document is lengthy and technical.

Following adoption of the 1986 ordinance, the city moved the district court to vacate the pending injunction, and the air carriers moved the court to modify the injunction to permit additional flights. Pending trial, the district court ordered the city to increase the number of daily carrier flights to 26, and this court affirmed without published opinion. See 815 F.2d 714 (9th Cir.1987).

The case was tried in March and April of 1988, and the district court ultimately entered a Memorandum of Decision and Findings of Fact and Conclusions of Law invalidating the ordinance. The city appeals both from the entry of the judgment and

the post-judgment order increasing the minimum number of allowable flights from 26 to 40.

## III. PREEMPTION

■ Under the supremacy clause,[1] federal law preempts state law when Congress expressly or impliedly indicates an intention to displace state law, or when state law actually conflicts with federal law. *Wardair Canada v. Florida Department of Revenue*, 477 U.S. 1, 6, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986). In 1973, the Supreme Court held that the pervasive scope of federal regulation of the airways implied a congressional intention to preempt municipal aircraft noise restrictions based upon the police power. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638–40, 93 S.Ct. 1854, 1862–63, 36 L.Ed.2d 547 (1973). The Court left the door open to noise regulations imposed by municipalities acting as airport proprietors, however, based on such municipalities' legitimate interest in avoiding liability for excessive noise generated by the airports they own. *Id.* at 635–36 n. 14, 93 S.Ct. at 1860–61 n. 14. *See Griggs v. Allegheny County*, 369 U.S. 84, 88–90, 82 S.Ct. 531, 533–34, 7 L.Ed.2d 585 *reh'g denied*, 369 U.S. 857, 82 S.Ct. 931, 8 L.Ed.2d 16 (1962). After *Burbank*, Congress expressly provided that the proprietary powers and rights of municipal airport owners are not preempted by federal law. 49 U.S.C. § 1305(b)(1). We recognized that municipally owned airports qualify for a proprietor exemption from preemption in *Santa Monica Airport Ass'n v. City of Santa Monica*, 659 F.2d 100, 102–104 (9th Cir. 1981).

■ Here, the air carriers argue that the ordinance's indemnity clause removes the city's right to claim the proprietor exemption because it shifts liability to airport users. Section 16.45.130 of the ordinance states: "Commencement of flight operations at Long Beach airport shall be deemed to constitute an undertaking to indemnify the City of Long Beach for any judgment for nuisance, noise, inverse condemnation or other damages awarded against the City as a result of flight operations of that user at the Long Beach airport." With such a provision, they contend, the reasons for allowing the municipality to regulate airport noise as a proprietor disappear.

A municipality may contract away its proprietorship rights, and thus lose the right to regulate noise. *See Pirolo v. City of Clearwater*, 711 F.2d 1006, 1009–10, *reh'g denied*, 720 F.2d 688 (11th Cir.1983). In this case, however, the ordinance merely establishes a right of recovery for damages actually awarded against the city. The city is thus still liable for noise, and continues to be the proprietor of the airport. *See San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1316–17 (9th Cir.1981) (per curiam), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (ownership, operation, promotion and ability to acquire necessary approach easements comprise proprietorship of airport); *see also Air Cal, Inc. v. City and County of San Francisco*, 865 F.2d 1112, 1117–18 (9th Cir.1989) (scope of proprietary powers).

Furthermore, we have held that the rationale for the exemption extends beyond purely financial concerns. "The [proprietor] should be allowed to define the threshold of its liability, and to enact noise ordinances under the municipal-proprietor exemption if it has a rational belief that the ordinance will reduce the possibility of liability or enhance the quality of the City's human environment." *Santa Monica Airport Ass'n*, 659 F.2d at 104 n. 5. The indemnity clause thus does not remove the city's power to regulate under the proprietor exemption. The city's authority to control airport noise is not preempted by federal law. *Id.* at 102–104.[2]

---

**1.** U.S. Const. art. VI, cl. 2.

**2.** Although the authority of airport proprietors to enact noise regulations is not preempted by federal law, this authority is not without limits. *City and County of San Francisco v. FAA*, 942 F.2d 1391, 1393 (9th Cir.1991) ("'the power delegated to airport proprietors to adopt noise control regulations is limited to regulations that are not unjustly discriminatory'"). Airport proprietors who exceed their regulatory authority risk

## IV. COMMERCE CLAUSE ANALYSIS

▮ The district court held that the ordinance impermissibly burdens interstate commerce. The commerce clause, of course, forbids discrimination against interstate commerce. The district court recognized that the ordinance does not on its face discriminate against interstate commerce. It expressly stated that it sought "[t]o balance competing interests" and that "[a]ccomodation must be made by both sides." It therefore weighed the "valid concerns of the Long Beach community" against "the demand for vibrant, safe, fair and efficient national transportation system" and concluded that the ordinance impermissibly burdened interstate commerce. We find that this close balancing process was inappropriate.

For a facially neutral statute to violate the commerce clause, the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational. Such is the case where the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry. In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), for example, the Supreme Court held unconstitutional an Arizona statute that prohibited a local melon grower from shipping its produce to California for packing. Produce packed in California could not be labeled as Arizona produce. The admitted purpose of forbidding this grower's practice was to force the grower to stop shipping its superior quality fruit to California and to pack instead in Arizona. Arizona's stated goal was to enhance the reputation of Arizona growers by enabling this grower's fruit to be labelled Arizona produce. 397 U.S. at 144, 90 S.Ct. at 848. The Court described the state's interest in such enhancement as "tenuous," 397 U.S. at 145, 90 S.Ct. at 849, and ultimately found this articulated purpose to be one that a state may not legitimately seek to advance through means

that affect interstate commerce. Regarding the statute's effect of blocking interstate shipments, the Court noted that "[s]uch an incidental consequence of a regulatory scheme could perhaps be tolerated if a more compelling state interest were involved," but found the interest there at stake to be one that was ultimately impermissible. 397 U.S. at 146, 90 S.Ct. at 849.

Similarly, in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), a facially neutral law was found in its operation to discriminate against commerce from outside the state. The North Carolina statute prohibited the display of state apple grades on closed containers of apples shipped into North Carolina. The result was that apples from Washington, which had a superior grading system that Washington used in lieu of the USDA system, had to enter North Carolina with no grade at all. The Supreme Court placed upon the state the burden of justifying its facially neutral statute, since it was found to have a disparate impact upon out-of-state apple producers. The Court found that, far from protecting consumers from confusion resulting from varying grading systems, the statute deprived consumers of any information on the quality of the out-of-state apples. 432 U.S. at 353–54, 97 S.Ct. at 2446–47. Thus, it actually undermined the goals set forth as its justifications, and caused local consumers to be less likely to buy out-of-state apples. Because the statute, in practice, discriminated against interstate commerce and served no other, legitimate purpose, the Court invalidated it.

In *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978), the Court again invalidated a statute because its negative impact on interstate commerce lacked any legitimate justification. The Court found that a Wisconsin statute regulating the length and configuration of trucks that could be operated on the state's roads burdened in-

having federal funds withheld by the Federal Aviation Administration. *Id.* at 1394–95. Whether the FAA is required to approve of a local noise regulation is a different question

from whether the regulation is constitutional, and the analysis in *City and County of San Francisco,* has no application to this case.

terstate commerce without making any discernible contribution to highway safety, the asserted goal of the statute.[3] Since the state was unable to offer any evidence that the regulation did anything to advance its purported purpose, that regulation could not pass even the most lenient of commerce clause tests. The Court suggested, however, that a regulation that did have some legitimate justification would easily pass the test it employed. *See* 434 U.S. at 447, 98 S.Ct. at 797 (plurality opinion) ("[o]ur holding is a narrow one, for we do not decide whether laws of other States ... would be upheld if the evidence produced on the safety issue were not so overwhelmingly one-sided as in this case."); *id.* at 450, 98 S.Ct. at 798 (concurrence) ("[h]ere the Court does not engage in a balance of policies; ... [i]nstead, after searching the factual record developed by the parties, it concludes that the safety interests have not been shown to exist as a matter of law.").

More recently, the Court has upheld a facially neutral statute against an assertion that it impermissibly burdened interstate commerce, because it found the purpose behind the regulation to be legitimate and permissible. *Northwest Central Pipeline v. State Corporation Commission of Kansas*, 489 U.S. 493, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989). The regulation permanently cancelled natural gas producers' entitlements to certain quantities of gas if production was delayed for too long. The purpose of the regulation was to combat an imbalance in natural gas sources that had been created by the failure of some producers to use their allotments in a timely fashion. The Court found that this was a permissible purpose, related to the state's legitimate interest in conservation and the protection of property rights, whose effect on interstate commerce was not directly discriminatory. 489 U.S. at 522–26, 109 S.Ct. at 1280–82. Addressing the question of whether the law nevertheless impermissibly burdened interstate commerce under *Pike*, the Court concluded that because the

effect on such commerce was not "clearly excessive" in comparison with the state's legitimate interest, the law must be upheld. *Id.* at 526, 109 S.Ct. at 1282. Thus, once the Court found that the articulated purpose behind the statute was not illegitimate, the statute was easily found to pass constitutional muster.

The ordinance here at issue has neither of the problems that have caused the Supreme Court to strike down regulations as creating impermissible burdens on interstate commerce. The stated purpose of the ordinance is not illusory, as in *Hunt* or *Raymond Motor*, and does not favor instate industry over out-of-state industry, as in *Pike*. The goal of reducing airport noise to control liability and improve the aesthetics of the environment is a legitimate and permissible one. *See Santa Monica Airport Ass'n*, 659 F.2d at 104 n. 5. The ordinance applies equally to interstate and intrastate flights, and to air carriers based within California as well as those from outside of that state. The ordinance thus regulates evenhandedly to further this legitimate interest.

■ The district court erroneously made a quasi-legislative judgment about whether the ordinance's effects on interstate commerce were greater than its beneficial effects on the environment. The court could properly have struck down this ordinance on commerce clause grounds if its purpose was in fact to disfavor interstate commerce or its benefits were illusory or insignificant, but neither is the case. Therefore, the ordinance would violate the commerce clause only if the particular means chosen to achieve its goals were irrational, arbitrary or unrelated to those goals. *South Carolina State Highway Dept. v. Barnwell Bros.*, 303 U.S. 177, 190–92, 58 S.Ct. 510, 516–18, 82 L.Ed. 734 (1938). *See Raymond Motor*, 434 U.S. 429, 98 S.Ct. 787 (law struck down because unrelated to goal); *Hunt*, 432 U.S. 333, 97 S.Ct. 2434 (law struck down because it undermined

---

**3.** Only eight Justices participated in the *Raymond Motor* decision. Both the lead opinion, for a plurality of four, and the concurring opinion, for the other four Justices, note that the

State of Wisconsin had not asserted a legitimate safety-based justification for the regulation. *See* 434 U.S. at 447–48, 98 S.Ct. at 797–98; *id.* at 450–51, 98 S.Ct. at 798–99.

articulated purpose). We therefore turn to an analysis of the particular provisions alleged to suffer from such an infirmity.

## V. WHETHER SPECIFIC SECTIONS WERE UNREASONABLE OR ARBITRARY

The district court held that several of the provisions enacted were so arbitrary, capricious or unrelated to any governmental purpose as to render the ordinance unconstitutional. There are several provisions in the ordinance which appear at first blush to be arbitrary or irrational; however, on closer analysis they must be seen as furthering legitimate governmental goals. We discuss the principal provisions attacked by the carriers.

■ Runways 25L and 7R are subject to the lowest noise maxima for aircraft that use them. *See* Ordinance § 16.45.030. These runways, however, overfly a freeway and a golf course, respectively. Thus, it is argued that it is unreasonable to place the strictest limits on aircraft that use them, as opposed to other runways that overfly residential areas.

It is not clear from the record, however, that these runways could be used for some of the larger and more noisy aircraft without improvement. In fact, there are strong suggestions to the contrary. The district court stated, for example, that these runways have "the capacity, *with reasonable pavement modifications to prevent deterioration,*" to handle such jets (emphasis added). The district court thus implicitly acknowledged that the noise level set forth in the ordinance represents the maximum physical capacity of these runways. For this reason, the ordinance cannot be said to be arbitrary on this ground.

■ The ordinance appears to place the greatest burden in terms of flight limits on air carriers, although the city's quarterly noise reports indicate that general aviation flights are involved in significantly more noise complaints than are air carrier flights. These restrictions on carriers, however, are not irrational. Air carriers, with their published schedules, are more amenable to the numerical flight limits contained in the rest of the ordinance. The looser type of regulation of general aviation, based on aggregates, contained in section 16.45.120(C) cannot be said to be an unreasonable way to regulate the noise of general aviation user groups. The ordinance contemplates possible reductions in general aviation flights as well. Ordinance § 16.45.120(C). We cannot say that the provisions limiting carrier flights are arbitrary or unreasonable.

■ Section 16.45.70(C) limits the number of daily air carrier flights to 32. As the district court found, the total noise produced by 32 flights could vary significantly depending upon what sorts of planes were used. Thus, the district court concluded that the choice of the number 32 was arbitrary. What the ordinance seeks to accomplish, however, is not simply the limitation of noise for its own sake; rather, it seeks to limit the annoyance that residents experience as a result of the airport's operation. It is not unreasonable to believe that the number of times the disturbance occurs could be as relevant as the cumulative noise created by the total number of such disturbances.

■ The district court found that sections 16.45.050 and 16.45.060, which impose fees for violations of daily and nighttime noise limits, respectively, were arbitrary and unreasonable because the fees imposed "do not appear to be proportionate to the problem being addressed." Section 16.45.060 does not say what the fee for violation of nighttime regulations is; rather, it simply provides for such a fee to be established by resolution of the City council. We cannot say that such a provision is arbitrary without predicting that the city council will act in an unreasonable fashion.

In sum, we cannot hold that any of the substantive provisions of the ordinance are completely arbitrary or unreasonable. Virtually any effort to impose specific limitations on flights and noise levels could be subject to similar attacks and create endless litigation. We find that each of the challenged provisions is sufficiently supported by a reasonable and legitimate justification. Therefore, the ordinance does not violate the commerce clause.

## VI. EQUAL PROTECTION

The district court held that the ordinance violated the equal protection rights of the air carriers, finding that it imposes "the entire burden of noise reduction on [the carriers] while, effectively, leaving other users of the airport unregulated." There is no dispute that the right to avoid reduction in the number of allocated flights is not a fundamental one, and the air carriers are not a suspect classification; therefore, we cannot find that the ordinance violates the principles of equal protection unless it is not rationally related to a legitimate interest of the City. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303–05, 96 S.Ct. 2513, 2516–18, 49 L.Ed.2d 511 (1976). As we have already noted, the singling out of air carriers for numerical restrictions is rational given the fact that because air carriers alone have regular, published schedules, it is only upon them that such limitations could have a predictable effect. The ordinance thus does not violate the carriers' equal protection rights.

## VII. PROCEDURAL DUE PROCESS.

The district court's final basis for invalidating the ordinance, and the one on which we uphold the district court's order, is that the ordinance denies the air carriers procedural due process. Specifically, the ordinance authorizes the airport manager, alone and without a hearing, to require carriers to reduce flights. It further provides that the determination of the airport manager "shall be conclusive unless it is demonstrated to lack a rational basis." The ordinance provides no procedures for notifying carriers of a contemplated change to allow them to challenge the determination of the airport manager.

We agree with the air carriers that they have a property interest in the number of flights that they have been allocated. Because of the advertisement and public announcement of flights, maintenance of these allocations is crucial to the continued functioning of their enterprise. A license such as these allocations, which is not the subject of an absolute entitlement but which nevertheless becomes "essential in pursuit of a livelihood," is "not to be taken away without that procedural due process required by the fourteenth amendment." *Bell v. Burson*, 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971).

Here, under the scheme that the ordinance seeks to impose, reduction in the number of permissible flights would be ordered automatically once the airport manager finds that a given carrier exceeds a certain cumulative noise level and had the highest average single event noise level. Ordinance § 16.45.120. Such a determination constitutes, for all intents and purposes, a revocation for cause. In *Bell*, the Court held that the revocation of a license for cause could not occur before notice and a meaningful hearing was provided. *See* 402 U.S. at 541–42, 91 S.Ct. at 1590–91. Leave to land one's planes at the airport is similarly a property interest closely associated with the pursuit of a livelihood; therefore, due process also requires notice and a hearing before flight allocations can be revoked. Because the ordinance does not provide such procedural protections, it cannot be upheld.

The city does not seriously defend the ordinance itself. Rather, it argues that the challenge to the ordinance is not ripe because the airport manager has not yet cut off any carriers' flights. Indeed, where there is no direct threat that a law will be construed in a given way, a suit to enjoin such a construction may not meet the case or controversy requirement for justiciability. *See International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954). Similarly, where it is impossible to know whether a party will ever be found to have violated a statute, or how, if such a violation is found, those charged with enforcing the statute will respond, any challenge to that statute is premature. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 303–05, 99 S.Ct. 2301, 2311–12, 60 L.Ed.2d 895 (1979). *See also Renne v. Geary*, — U.S. —, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991).

As the *Babbitt* Court pointed out, however, the line that the case or contro-

versy requirement draws between justiciable and nonjusticiable issues is often a fine one. *See* 442 U.S. at 297, 99 S.Ct. at 2308. Thus, the fact that a party has not yet engaged in the regulated conduct in question need not preclude that party's challenge to the regulation where it is clear that the regulation "is sure to work the injury alleged." 442 U.S. at 300, 99 S.Ct. at 2309. Given that the language of the ordinance here at issue is mandatory, providing that the air carrier with the highest average single event noise level "shall ... reduce flights," it is clear that at least one of the appellees will be deemed the noisiest carrier and will consequently be required to reduce flights.

Where, as here, the threat of action is very real, courts have permitted challenges to legislative enactments that are alleged to lack necessary procedural protections before they are implemented to work any actual deprivation. *See, e.g., NAACP, Western Region v. City of Richmond,* 743 F.2d 1346, 1351 (9th Cir.1984) (finding justiciable the NAACP's facial challenge to the City's parade ordinance, since it could reasonably fear that the City would exercise the unfettered discretion in enforcement that the terms of the ordinance provided); *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497 (7th Cir.1980) (plaintiff need not go through any procedures contemplated by the ordinance where his challenge was to the very requirement that he be subject to such procedures), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). *See generally* 4 Davis *Administrative Law Treatise* §§ 25:1–16 (describing the *International Longshoremen's* decision, upon which the city relies, as an example of an "extreme" philosophy that was held by the Supreme Court during the late 1940s and early 1950s, but which has subsequently been disavowed in favor of a standard of ripeness that allows a person to challenge a legislative enactment when that person is faced with a choice between compliance with the enactment and sanctions for noncompliance). We hold that the air carriers' challenge to the procedural provisions of the ordinance is ripe for our review, and agree with the air carriers that the absence of adequate procedural protections renders the ordinance constitutionally infirm.

## VIII. THE COMMUTER AIRLINES

 There is another issue before us, which lies outside of the analysis of the city's ordinance. During the pendency of the original preliminary injunction, entered before this case was tried, the city denied commuter airlines all access to the airport. The city's asserted reason for this denial was its interpretation of the preliminary injunction as not allowing it to permit any flights in addition to the number specified therein, which was the number allocated to the scheduled carriers. The district court found that this interpretation of the injunction was incorrect, and ruled that neither the injunction nor the ordinance allowed the city to work such an exclusion. It also found that this exclusion impermissibly burdened interstate commerce.

The city dealt with the commuters, as it dealt with the other air carriers, in a manner that did not distinguish between intrastate and interstate commerce. Its purpose, to control noise and liability, is a legitimate one. Like the ordinance, the city's ban on commuter flights thus cannot be said to violate the commerce clause. The district court's decision to the contrary was erroneous.

 We agree with the district court, however, that the city's asserted basis for excluding the commuters is invalid. The injunction does not provide a ceiling for all flights, thereby requiring the exclusion of the commuters. The ordinance itself would have allowed commuters to use the airport. There is thus nothing in the record that offers any justification for the city's decision to deny access to the commuters. We therefore affirm the district court's order that the city cease to exclude the commuters.

## IX. CONCLUSION

The district court erred in finding that the ordinance was preempted by federal law, impermissibly burdened interstate commerce, violated equal protection principles, and was arbitrary, capricious, or otherwise not rationally related to legitimate governmental concerns. The district court

988

was correct, however, in its determination that the provision authorizing reduction in flights without adequate notice and opportunity to be heard impermissibly denies procedural protections in conjunction with the deprivation of an important interest. Because of the ordinance's nonseverability clause, this procedural flaw is fatal. We therefore find that the district court appropriately enjoined enforcement of the ordinance. We also find that the district court correctly concluded that the exclusion of commuters was not mandated either by the ordinance or by the preliminary injunction.

AFFIRMED.

BEEZER, Circuit Judge, concurring:

I agree that the ordinance denied the air carriers procedural due process. Because this conclusion is sufficient to void Long Beach City Ordinance C–6278 (July 22, 1986) and to affirm the district court's judgment, I do not believe it necessary or appropriate to address other grounds on which the judgment may have been based.