NATIONAL ASSOCIATION OF OPTOMETRISTS & OPTICIANS; LENSCRAFTERS, INC; and Eye Care Centers of America, Inc., Plaintiffs,

v.

Edmund G. BROWN, Jr., in his official capacity as Attorney General of the State of California; and Charlene Zettel, in her official capacity as Director of the Department of Consumer Affairs, Defendants.

No. CIV. S–02–1464 LKK/DAD.

United States District Court, E.D. California.

April 28, 2010.

Barry Evan Friedman, New York University School of Law, New York, NY, Lori A. Schechter, Morrison & Foerster LLP, San Francisco, CA, for Plaintiffs.

Linda K. Schneider, Sherry Lynn Ledakis, State of California, Office of the Attorney General, San Diego, CA for Defendants.

## *ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

This case concerns the constitutionality of certain California statutes and regulations. These statutes and regulations prohibit optical companies from offering prescription eyewear at the same location in which eye examinations are provided and from advertising that eyewear and eye examinations were available in the same location. Plaintiffs, an association of optometrists and opticians and two out-of-state optical companies, contend that these statutes and regulations violate the dormant Commerce Clause because their burden on interstate commerce excessively outweighs the local benefits of the law. Plaintiffs and defendants each bring cross-motions for summary judgment. For the reasons described below, plaintiffs' motion is denied and defendants' motion is granted.

### I. BACKGROUND[1]

In 2002, plaintiffs, the National Association of Optometrists and Opticians

---

1. Several motions to seal were filed by parties concerning the briefs and exhibits in these

("NAOO") and two out-of-state optical companies, LensCrafters, Inc. ("LensCrafters") and Eye Care Centers of America, Inc. ("ECCA"), filed a complaint against defendants, the Attorney General of California and the Director of the California Department of Consumer Affairs, seeking declaratory and injunctive relief. Plaintiffs challenge Sections 655, 2556, and 3130 of California's Business & Professions Code and their companion regulations, 16 California Code of Regulations, Title 16, Sections 1399.251 and 1514. These provisions prohibit optical companies from offering prescription eyewear at the same location in which eye examinations are provided and from advertising that eyewear and eye examinations are available at the same locations. Optometrists and ophthalmologists who are unaffiliated with optical companies, however, may offer prescription eyewear at the same location in which eye examinations are provided and may advertise these services.

Plaintiffs allege that these statutes and regulations violate the dormant Commerce Clause because local optometrists and ophthalmologists may offer "one-stop shopping" of both eyewear and eye examinations, which they contend is the preferred or dominant business model, and out-of-state optical companies are prohibited from providing the same one-stop shopping. Defendants argue that these statutes and regulations do not violate the dormant Commerce Clause because they promote the health of Californians by protecting the optometric profession from being taken over by large business interests.

In 2003, plaintiffs and defendants filed their first cross-motions for summary judgment. On March 10, 2004, before the court issued an order on these motions, the case was stayed pending resolution of *People v. Cole*, 38 Cal.4th 964, 44 Cal.Rptr.3d 261, 135 P.3d 669 (2006). This court then

granted plaintiffs' motion for summary judgment and denied defendants' motion on the ground that "the challenged laws substantially effect and discriminate against interstate commerce and therefore are subject to strict scrutiny under the dormant Commerce Clause." *Nat'l Ass'n of Optometrists & Opticians v. Lockyer* ("*Lockyer*"), 463 F.Supp.2d 1116, 1138 (E.D.Cal.2006). This court continued to hold that, "Although California has legitimate interests in regulating the provision of health services, defendants have failed to meet [their] burden of showing that [they have] no other means to advance [their] interests." *Id.* As such, this court concluded that the laws and regulations violate the dormant Commerce Clause.

Defendants appealed. On May 28, 2009, the Ninth Circuit reversed this court's decision and remanded the case for the court to conduct the *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), balancing test. *Nat'l Ass'n of Optometrists & Opticians v. Brown* ("*Brown*"), 567 F.3d 521, 528 (9th Cir. 2009). The Ninth Circuit held that the challenged laws and regulations are not discriminatory under the dormant Commerce Clause because opticians, including optical chains like LensCrafters, are not similarly situated to optometrists and ophthalmologists.

The Ninth Circuit first concluded that "the dormant Commerce Clause is applicable to this case because the retail sale of eyewear involves and affects interstate commerce such that Congress could regulate in that area." *Id.* at 524. The court continued, however, to reverse this court's ruling that the laws and regulations were discriminatory. Specifically, the court reversed this court's ruling (based upon the statement of the chief sponsor of the challenged provisions) that the regulatory

---

motions. The court addresses these motions     in a concurrently filed order.

scheme was intended as economic protectionism favoring California business. *Id.* at 525. Rather, the Ninth Circuit decided that, "[T]he statement is clear that the sponsor's objective was to protect California's optometric profession from being taken over by large business interests, as had been experienced in eastern states." *Id.* Thus, the Ninth Circuit held that the challenged provisions did not have a discriminatory purpose.

The Circuit then looked to whether the laws and regulations had a discriminatory effect on interstate commerce. This question turned on the definition of similarly situated entities. Plaintiffs argued, and this court held, that optometrists and ophthalmologists were similarly situated to opticians, including optical chains, because they "compete in the same market, with the same produces, for the same customers." *Lockyer,* 463 F.Supp.2d at 1129. The Ninth Circuit, however, decided that optometrists and ophthalmologists are not similarly situated with opticians. That court held that, "As health care providers, optometrists and ophthalmologists clearly have special responsibilities that opticians do not, and as commercial concerns, opticians have business structures available to them that optometrists and ophthalmologists do not." *Brown,* 567 F.3d at 527.

The Court of Appeals continued to apply *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 125–26, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), to conclude that optometrists and ophthalmologists are not similarly situated to opticians. This court previously held that *Exxon* "is clearly distinguishable." *Lockyer,* 463 F.Supp.2d at 1127. Specifically, this court reasoned,

> Unlike *Exxon,* in the instant case, California has enacted a statutory scheme which has the practical effect of barring all out-of-state entities from offering one-stop shopping, while reserving for the principal in-state competitors the

right to provide the competitive advantage. [¶] In *Exxon,* the Court found that interstate dealers were able to compete in the same manner as in-state service station owners under the Maryland law. Only gasoline refiners could no longer compete in the Maryland retail market. Unlike the case at bar, in *Exxon,* other interstate firms could compete in the Maryland market. Under these circumstances, the Court held, the dormant Commerce Clause was not violated.

*Id.* The Court of Appeals, however, found that *Exxon* is controlling here and, as such, optometrists and ophthalmologists are not similarly situated to opticians. The court interpreted *Exxon* to "distinguish[ ] between ... entities based on their business structures, holding that a state may prevent businesses with certain structures or methods of operation from participating in a retail market without violating the dormant Commerce Clause." *Brown,* 567 F.3d at 527. Accordingly, the Ninth Circuit held, "Because states may legitimately distinguish between business structures in a retail market, a business entity's structure is a material characteristic for determining if entities are similarly situated." *Id.* The court then applied *Exxon* to "reject LensCrafters' argument that competition in the same market renders it similarly situated to optometrists and ophthalmologists." *Id.* As such, "opticians are not the same as optometrists or ophthalmologists.... Because the California laws make no geographical distinctions between similarly situated entities, they are not invalidated by the dormant Commerce Clause." *Id.* at 527–28.

When discussing the government interest in the challenged provisions, this court previously held that, "defendants fail[ed] to establish that the public's health is in greater danger when receiving care from an optometrist affiliated with a chain as

compared to receiving care from a dispensing optometrist" *Lockyer*, 463 F.Supp.2d at 1136–37. The Court of Appeals, however, disagreed with this analysis, and stated that

> Here through the challenged laws, California has sought to protect optometrists and ophthalmologists as health care professionals from being affected by subtle pressures from commercial interests. The pressures of co-ownership and profit sharing prohibited by the statutes are more obvious, but potentially even a landlord-tenant relationship could undermine health care quality if the landlord required a certain level of performance to maintain the lease. It is true that an optometrist or ophthalmologist would still be bound by professional and ethical standards. However, it is the subtle pressure to conform to commercial desires that the statutes seek to avoid. These subtle pressures would be difficult to regulate as violations of professional or ethical standards. Thus, the California laws in this case are health regulations designed to prevent health care providers from being unduly affected by commercial interests. We must give deference to the State's choice to protect its citizens in this way.

*Brown*, 567 F.3d at 526.[2] Accordingly, the Ninth Circuit disagreed with this court's analysis of the record that "there is no evidence that the practices that defendants complain of actually harm the public's health." *Lockyer*, 463 F.Supp.2d at 1136. Rather, the Court of Appeals adopted defendant's theory that commercial optical companies subtly pressure co-locating optometrists and ophthalmologist to conform their treatment of patients with commercial goals. Such subtle pressures, if they exist, are difficult, if not impossible to measure. Nonetheless, the Circuit held that these pressures may negatively effect the quality of health care provided by optometrists and ophthalmologists working within such companies.

At the conclusion of its analysis, the Ninth Circuit noted that:

> [D]espite LensCrafters' claims that the ability to offer one-stop shopping affords a sales advantage to optometrists and ophthalmologists, there are other sales advantages enjoyed by LensCrafters by virtue of their size, such as lower cost purchasing and the ability to offer a wider selection of eyewear. It is important that LensCrafters is not precluded from operating in California, which is the situation for out-of-state entities in some dormant Commerce Clause cases. LensCrafters is only deprived of one eyewear sales method.

*Id.* at 528.

The court then remanded the case to this court to conduct the *Pike* balancing test. Under this test, plaintiffs "bear[ ] the burden of proof in establishing the excessive burden [on interstate commerce] in relation to the local benefits" of the challenged laws and regulations. *Id.*

## II. STANDARD

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970);

---

**2.** The parties dispute whether this court is bound by this analysis. While this discussion is dicta, dicta from a higher court, especially when it concerns the case at bar, should not be treated lightly, because it serves as a "prophecy of what that Court might hold."

*See McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1131 (9th Cir.2004) (internal quotes and citations omitted) (holding that court of appeals should not generally disregard dicta of the Supreme Court).

*Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 853 (9th Cir.1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.,* 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *see also First Nat'l Bank,* 391 U.S. at 289, 88 S.Ct. 1575. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* )); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

### III. ANALYSIS

▮▮▮ The Ninth Circuit remanded this case to apply the *Pike,* 397 U.S. at 142, 90 S.Ct. 844, balancing test. *Brown,* 567 F.3d at 529. Under this test, plaintiffs bear the burden of proof in establishing an excessive burden to interstate commerce caused by the challenged laws and regulations in relation to their putative local benefits. *Id.* at 528. Local laws and regulations are rarely struck down under the *Pike* test. *See, e.g., W. Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 200, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) ("Nondiscriminatory measures ... are generally upheld, in spite of any adverse effects on interstate commerce, in part because the existence of major in-state interests adversely affected is a powerful safeguard against legislative abuse.") (internal quotation omitted); *Bibb v. Navajo Freight Lines, Inc.,* 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959) ("This is one of those cases—few in number—where local safety measures that are nondiscriminatory place an unconstitutional burden on interstate commerce."). Under the Circuit's previous analysis, plaintiffs here are unable to demonstrate any burden to interstate commerce, let alone an excessive one. Further, the Court of Appeals has held that the challenged provisions serve local interests as "health regulations [that are] designed to prevent health care providers from being unduly affected by commercial interests." *Brown,* 567 F.3d at 526. As such, the laws and regulations at issue do not excessively burden interstate commerce in relation to their local benefits. Accordingly, plaintiffs' motion for summary judgment is de-

nied and defendants' motion for summary judgment is granted.

Plaintiffs raise two arguments as to how the challenged provisions burden interstate commerce. First, they argue that they burden interstate commerce by restricting access to local markets by out-of-state companies. Second, plaintiffs argue that the substantial financial loss that interstate firms will incur under the challenged laws and regulations is so great that it constitutes a burden on interstate commerce. The court need not consider the evidence supporting these theories of burden to interstate commerce because both fail as a matter of law under the Circuit's ruling. Below, each argument will be addressed in turn.

### 1. Restricted Access to Local Markets by Out–of–State Companies.

Plaintiffs argue that interstate commerce is burdened because there is no way in which an interstate company can offer one-stop shopping. According to plaintiffs, one-stop shopping is the " 'dominant form of retailing eyewear' by all eyewear sellers, including dispensing optometrists." Pls. Mot. Summ. J. 9. Plaintiffs have presented some surveys that indicate that about 80% of responding consumers purchased their eyeglasses at the same location in which they obtained an eye exam. *Id.* at 9 n. 6. Further, they state, the market share of retail chains nationwide in 2001 is 40% and in California in 2003 is 26%. *Id.* at 9. They indicate that some retail chains decline to enter California at all, and the ones that have entered are "simply disappearing from the market." *Id.* at 10.

Plaintiffs then, in effect, ask this court to disregard the analysis and reasoning of the Ninth Circuit in reversing this very case. Plaintiffs argue that this court should distinguish the case at bar from *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91

(1978), as it did in its prior order. However, the Ninth Circuit found *Exxon* binding upon the case and even relied upon *Exxon's* analysis under *Pike* in its order. *Brown,* 567 F.3d at 527 ("[I]n *Exxon,* the Court distinguished between the entities based on their business structures, holding that a state may prevent businesses with certain structures or methods of operation from participating in a retail market without violating the dormant Commerce Clause."). Accordingly, the court applies *Exxon* to the case at bar.

■ In *Exxon,* the Supreme Court considered whether a Maryland statute prohibiting producers or refiners from operating retail services stations within the state violated the dormant Commerce Clause. 437 U.S. at 119–20, 98 S.Ct. 2207. This law was passed following the 1973 shortage of petroleum where evidence indicated that "gasoline stations operated by producers or refiners had received preferential treatment during the period of short supply." *Id.* at 121, 98 S.Ct. 2207. The plaintiff refiners presented evidence that "their ownership of retail service stations has produced significant benefits for the consuming public." *Id.* at 123, 98 S.Ct. 2207. They did not, however, present any evidence "that the total quantity of petroleum products shipped into Maryland would be affected by the statute." *Id.* The refiners also presented evidence that "at least three refiners will stop selling in Maryland" because of the law. *Id.* at 127, 98 S.Ct. 2207. After holding that the statute did not discriminate against interstate commerce because it created "no barriers whatsoever against interstate independent dealers" or prohibit the flow of interstate goods, *id.* at 126, 98 S.Ct. 2207, the Supreme Court evaluated whether the law "impermissibly *burdens* interstate commerce," *id.* at 127, 98 S.Ct. 2207 (emphasis in original). The Supreme Court held that

the Commerce Clause does not protect "the particular structure or methods of operation in a retail market." *Id.* The court continued,

> [T]he Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations. It may be true that the consuming public will be injured by the loss of high-volume, low-priced stations operated by the independent refiners, but ... that argument relates to the wisdom of the statute, not to its burden on commerce.

*Id.* at 127–28, 98 S.Ct. 2207. Accordingly, as the Ninth Circuit explained when applying this analysis to the case at bar, "[A] state may prevent businesses with certain structures or methods of operation from participating in a retail market without violating the dormant Commerce Clause." *Brown,* 567 F.3d at 527 (citing *Exxon,* 437 U.S. at 127, 98 S.Ct. 2207.).

■ As the Ninth Circuit stated, California here "merely" prevents opticians to offer one-stop shopping as independent optometrists and ophthalmologists may do. While the challenged provisions may cause consumers to prefer independent optometrists and ophthalmologists to chain optical retailers, "interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one [retailer] to another." *Exxon,* 437 U.S. at 127, 98 S.Ct. 2207.

Given that *Exxon* is not distinguishable on the grounds reversed by the Ninth Circuit (e.g. that it is impossible for any interstate company to sell eyewear under a one-stop shopping model), plaintiffs seek to distinguish *Exxon* on the grounds that one-stop shopping is the "dominant" method of doing business, not a mere preferred method of doing business. Plaintiffs, how-

ever, provide no authority in support of this theory that prohibiting certain business structures from access to the dominant method of selling eyewear is somehow different from their prohibiting them from the preferred method of selling eyewear.[3] This is especially so given that the Court of Appeals specifically questioned the significance of LensCrafters' complaint that "one-stop shopping affords a sales advantage to optometrists and ophthalmologists." *Brown,* 567 F.3d at 528. The circuit stressed that, "It is important that LensCrafters is not precluded from operating in California .... LensCrafters is only deprived on one eyewear sales method." *Id.* Because LensCrafters is only deprived of a method of doing business, and because the Circuit has clearly held that such a deprivation does not constitute a burden on interstate commerce, plaintiffs have not shown that interstate commerce is burdened because retail optical chains are unable to offer one-stop shopping in California.

■ When a plaintiff has failed to demonstrate the presence of a burden on interstate commerce, courts need not attempt to balance whether a non-burden is excessively outweighed by the putative local benefits of the law. *See Exxon,* 437 U.S. at 127–29, 98 S.Ct. 2207 (disposing of plaintiffs' dormant Commerce Clause claims by finding that the statute at issue does not burden interstate commerce).

■ Even if plaintiffs had demonstrated a burden to interstate commerce, however, for a court to hold that a facially neutral statute violates the Commerce Clause, "the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational." *Alaska Airlines, Inc. v. City of Long Beach,* 951 F.2d 977, 983 (9th Cir.1991) (holding that

---

**3.** Assuming there is a meaningful distinction.

district court's close balancing of the burden on interstate commerce with the local benefits of the challenged ordinance was inappropriate). The court continued to hold that a statute is unreasonable or irrational under this test "where the asserted benefits of the statute are in fact illusory *or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." Id.* Further, the court reasoned, that a regulation that has "some legitimate justification would easily pass" the *Pike* test as applied in *Raymond Motor Transp., Inc. v. Rice,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978) (invalidating statute where the state was unable to offer any evidence that the regulation did anything to advance its argued purpose).[4]

In the instant case, the Ninth Circuit found that the benefits of the challenged laws and regulations are not illusory and do not evidence impermissible favoritism when it reasoned that the provisions serve to protect consumer health by preventing optical companies from exerting "subtle pressures" upon optometrists and ophthalmologists. *Brown,* 567 F.3d at 526. Given that plaintiffs have not shown any burden on interstate commerce, and even if they did, that the burden must be so extreme as to make the statute irrational to invalidate the laws and regulation, the challenged provisions are valid under the *Pike* test as to this theory of burden.

## 2. Substantial Financial Loss

Plaintiffs' second argument is that the substantial financial loss that interstate firms will incur under the challenged laws and regulations is so great that it constitutes a burden on interstate commerce. In support of this argument, however, plaintiffs only present evidence of the predicted loss in revenue plaintiff LensCrafters will incur if it is "required to forgo the sale of eyewear at the same location where eye exams are provided." Pls. Mot. Summ. J. 11. The amount is substantial.[5] Whether LensCrafters' loss of profits constitutes a burden on interstate commerce requires resolution of a tension between *Pike* and *Exxon.* Specifically, in *Pike,* which was decided in 1970, the Supreme Court held that interstate commerce was burdened based upon an individual firm's financial loss due to the regulation. 397 U.S. 137, 145, 90 S.Ct. 844 (1970). Eight years later, however, the Court held in *Exxon* that the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." 437 U.S. 117, 127–28, 98 S.Ct. 2207 (1978).

Plaintiffs refer the court to *Pioneer Military Lending v. Manning,* 2 F.3d 280 (8th

---

**4.** Plaintiff heavily relies upon *Yamaha Motor Corp. v. Jim's Motorcycle Inc.,* 401 F.3d 560 (4th Cir.2005). Accordingly, defendants spend significant pages of their briefs distinguishing the case. Suffice to say, *Yamaha* is clearly distinguishable from the case at bar due to the Ninth Circuit's opinion reversing this court's prior order. Specifically, in *Yamaha,* the Fourth Circuit concluded that a challenged law provided no local benefits, and thus the difficulty imposed upon out-of-state firms to enter the state market excessively outweighed its local benefits. *Id.* at 569–74. The court reasoned that there were no local benefits because the state had another law that served the same purpose, but did not

burden interstate commerce to nearly the same extent. *Id.* Because the challenged law did not provide any benefit beyond the other law, the challenged law served no local benefit. *Id.* Here, however, the Ninth Circuit reasoned that the challenged provisions serves a purpose of avoiding the subtle pressures upon health professionals to conform with corporate interests to the detriment of the health of their patients. Given this distinction, *Yamaha* does not provide persuasive guidance to the case at bar.

**5.** Pursuant to the tentative sealing orders in this case, the court omits the specific amount of revenues LensCrafters estimates it will lose.

Cir.1993), which addresses this tension and upon which this court has previously relied in a previous case in granting a preliminary injunction, *Pioneer Military Lending v. DuFauchard,* No. Civ. S–06–1445 LKK/PAN, 2006 WL 2053486, 2006 U.S. Dist. LEXIS 53973 (E.D.Cal. July 21, 2006). In *Manning,* the Eighth Circuit held that, "*Exxon* neither overruled *Pike,* nor made irrelevant the burden that a state regulation places on an individual business." 2 F.3d at 283. Rather, *Exxon* "emphasizes that the burden placed on any individual firm should be regarded in the context of the overall interstate market." *Id.* Both *Manning* and *DuFauchard* concern state regulations preventing the lender plaintiff from making small loans to non-resident military borrowers. In *Manning,* the court described plaintiff as a Nebraska company who adheres to Nebraska laws when loaning funds to non-resident military borrowers in Missouri. *Id.* at 281. The court then adopted the district court's finding that the volume of plaintiff's business in Missouri was not large enough for it to maintain a profitable service in the state if forced to comply with the Missouri's regulations. *Id.* at 282. Essentially, compliance "would have the practical effect of closing [plaintiff's] operation in Missouri." *Id.* The Eighth Circuit then considered the preclusive costs plaintiff would face to do business in Missouri "[i]n the context of the overall market for military loans." *Id.* at 283–84. Specifically, the court evaluated evidence that plaintiff, while not the only company to provide loans to military personnel in Missouri, "was the only company to provide loans to personnel in the lowest pay grades." *Id.* at 284. As such, the Eighth Circuit concluded, plaintiff "serviced a unique niche in the market and that the imposition of Missouri's regulations would force [plaintiff] to discontinue its operation, thereby leaving a gap where that niche existed." *Id.*

The court then assessed the local benefits of these regulations. Missouri argued that the state had "an interest (1) in protecting its residents from usurious interest rates and oppressive lending practices; (2) in protecting its reputation as a state which provides equal protection; and (3) in preventing [plaintiff] from obtaining a competitive advantage over other companies making loans to military personnel." *Id.* at 284. The Eighth Circuit, however, found these interests to be weak. Specifically, as to the first interest, only non-residents can obtain loans form plaintiff, so the regulations do not protect residents. *Id.* As to the second interest, the court adopted the district court's factual finding that there was no evidence that Missouri's reputation would be harmed by plaintiff's activities. *Id.* As to the final interest, the court concluded that "[t]he interest of Missouri in preventing this non-resident loan company from obtaining a competitive advantage is slight on the record presented." *Id.* at 285. Considering the significant burden to interstate commerce and the minimal local interest, the Eighth Circuit held that the regulations, as applied to plaintiff, violated the dormant Commerce Clause.

Here, plaintiffs have presented evidence that LensCrafters will lose a substantial amount of profits due to California's regulations preventing it from operating one-stop shopping retail stores in the state. Plaintiffs do not, however, present any evidence as to how this loss of profits burdens interstate commerce. California consumers are not in any way barred from purchasing eyewear from LensCrafters. Further, there is no evidence that California consumers, or a class of California consumers, will purchase less or no eyewear because of the regulations. Plaintiffs also argue that the burden on interstate commerce becomes apparent when considering the impact the regulations would have

upon retail chains if every state were to adopt them. This argument is similarly without weight because plaintiffs have not shown that these regulations are a burden to interstate commerce, but rather that they inhibit the business model plaintiffs find to be most profitable.

Even if this court were to find that plaintiffs' loss of profits constitutes a burden on interstate commerce, the local benefits of the challenged provisions are said to be more substantial than those in *Manning*. As discussed above, the statutes and regulations at issue here are said to serve a legitimate government purpose of preventing optometrists and ophthalmologists from the subtle pressures exerted by optical companies and, as such, they serve the goal of achieving a higher level of consumer health care in California. Again, the court balances a minimal, if any, burden on interstate commerce against a significant local interest, and finds that the burdens do not excessively outweigh the local benefit.

Thus, plaintiffs' motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment, Dkt. No 478, is DENIED and defendants' motion for summary judgment, Dkt. No. 499, is GRANTED.

IT IS SO ORDERED.