**BATH MEMORIAL HOSPITAL, et al., Plaintiffs,**

**v.**

**MAINE HEALTH CARE FINANCE COMMISSION, et al., Defendants.**

Civ. No. 86–0140–P.

United States District Court, D. Maine.

Nov. 9, 1987.

---

Joseph M. Kozak, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, Me., and Jay H. Krall, for plaintiffs.

Lucinda E. White, Gordon E. Stein, Charles F. Dingman, Health Care Finance Commission, Augusta, Me., and Suzanne M. Gresser, for defendants.

John P. Doyle, Jr., Portland, Me., and Arlyn H. Weeks, and William F. Julavits, Maine Hosp. Ass'n, Augusta, Me., for Maine Hosp. Ass'n.

Leigh Ingalls Saufley, Sr., Asst. Atty. Gen., Dept. of Human Service, Augusta, Me., and T. Christopher Beach, Asst. Atty. Gen., for Me. Dept. Human Services.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### I.  Introduction

This action raises constitutional and statutory challenges to the Maine Health Care Finance Act (the "Act"), 22 M.R.S.A. §§ 381–399 (Supp.1985). Plaintiffs are nine hospitals located within the State of Maine.[1] Defendants are the Maine Health Care Finance Commission ("Commission"), a state executive agency created to regulate hospital cost increases, and its seven members and officers.[2] The Maine Department of Human Services, which administers the Medicare program in Maine, was permitted to intervene.

Pursuant to the Act, Defendant Commission sets annual limits on the revenue each hospital can collect from its patients for patient care and hospital overhead. Plaintiffs claim that the Act violates the U.S. Constitution and 42 U.S.C. § 1983 by permitting the Commission to calculate the hospitals' annual revenue limits on improp-

---

1. 1. Bath Memorial Hospital, Bath;
2. Blue Hill Memorial Hospital, Blue Hill;
3. Franklin Memorial Hospital, Farmington;
4. Henrietta D. Goodall Hospital, Sanford;
5. Mercy Hospital, Portland;
6. Mount Desert Island Hospital, Bar Harbor;
7. St. Joseph Hospital, Bangor;
8. Waldo County General Hospital, Belfast; and
9. York Hospital, York.

2. David F. Wihry, Chairman; Agnes E. Flaherty, Diantha Carrigan, Paul G. Poulin and Peter M. Leslie, members; and Francis G. McGinty, Executive Director.

er bases. Defendants have moved to dismiss the action on the grounds that abstention is warranted. In the alternative, Defendants have moved for summary judgment. Defendant DHS has also moved for summary judgment. Plaintiffs York Hospital and Mount Desert Island Hospital have moved for partial summary judgment on Counts I–VII, IX and X of the Complaint.

For the reasons set forth herein, the Court grants Defendant Commission's Motion to Dismiss on the basis that abstention is appropriate.

## II. Overview

In an attempt to limit hospital cost increases, Defendant Commission sets annual limits on the amount of revenue Maine hospitals can collect from their patients. The Commission does this in a statutorily complex but mathematically simple manner.[3] First, it calculates a hospital's annual financial requirements, including debt service, anticipated capital improvements and a forecast of actual financial outlays for patient care based on outlays for prior years.[4] Then it ascertains and totals the hospital's non-patient sources of income, such as third-party payors' reimbursements (Blue Cross, Medicare and Medicaid), gifts and grants, and interest on accumulated income.[5] It then subtracts this available income from the hospital's financial requirements, arriving at a Gross Patient Service Revenue Limit ("GPSRL"). It apportions a share of the GPSRL to each major third-party payor, and allows the hospital to collect the balance from its patients.

Plaintiffs challenge the Act that empowers the Commission on 10 constitutional and statutory grounds. Eight of those claims arise from step two of the Commission's revenue limit calculations, wherein the Commission determines the hospital's non-patient income sources. The Act permits the Commission to consider, *inter*

*alia*, profits the hospitals earn under the federal Medicare prospective payment system ("PPS"),[6] gifts the hospitals use for purposes specified by their donors, and interest hospitals earn on funds set aside for servicing debts, a portion of which funds are donated.[7]

Plaintiffs claim that the Act, by permitting the Commission to include these three sources of income in its annual limit calculations, violates the Supremacy Clause of the U.S. Constitution, impairs their contracts with Medicare and with gift donors, and unconstitutionally takes without compensation their Medicare profits, restricted gifts and debt service fund interest. They claim that the Commission's administration of the Act violates 42 U.S.C. § 1983.

Plaintiffs' remaining two claims arise from separate provisions in the Act. Count VIII alleges that the Act's cap on total spending for capital improvements prevents Plaintiffs from completing projects that have already been approved under the state's certificate of need system ("C.O. N.").[8] Plaintiffs claim this cap violates the Equal Protection and Due Process clauses of the U.S. Constitution by creating arbitrary distinctions between equally meritorious C.O.N.-approved projects.

Finally, they claim that the Commission's annual revenue limit calculation denies them Due Process because it fails to consider, in calculating each hospital's annual financial requirements, the cost of challenging the Commission's decisions. This, Plaintiffs claim, prevents them from raising the funds with which to exercise their due process rights to challenge rulings that effect their property interests.

In their Answer, Defendants set up six defenses. They claim, most importantly, that the Court lacks subject matter jurisdiction over Counts I–IV and VII–IX due to absence of standing in the Plaintiffs, and that, if the Court determines that it has

---

3. *See* 22 M.R.S.A. §§ 396–399.

4. 22 M.R.S.A. §§ 396–396–D.

5. 22 M.R.S.A. § 396–E.

6. 42 U.S.C. § 1395ww.

7. 22 M.R.S.A. § 396–E.

8. 22 M.R.S.A. §§ 301 et seq.

jurisdiction, abstention is appropriate and, therefore, the exercise of jurisdiction is not. In Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, currently before the Court, Defendant raises standing issues as to Counts II and III only.

The Court will address the standing and abstention claims in turn.

### A. Standing

■ Defendants claim the Court lacks subject matter jurisdiction over Counts II and III because Plaintiffs lack standing. Defendants claim none of the Plaintiffs have suffered a direct injury from the alleged loss of profits earned under Medicare's PPS, because the amount of Medicare profits earned is unaffected by the Act. Defendants claim, further, that the alleged loss of Medicare profits Plaintiffs allege is outside the "zone of interests" protected by the Medicare Act,[9] because that act was designed to protect and benefit Medicare beneficiaries, not health care providers. Finally, Defendants claim that Plaintiffs have no private cause of action to enforce their alleged rights under the Medicare Act.

Plaintiffs claim, and the Court agrees, that Defendants' allegations lack merit. Plaintiffs have a legitimate property interest in the profits they earn under Medicare's PPS, whether or not the Medicare Act guarantees them. Further, the express provisions of the MHCFC Act may impact upon those Medicare profits and may constructively affect Plaintiffs' control over them, whether or not the provisions increase or decrease the size of the profits. Plaintiffs have therefore alleged a sufficient personal stake in the outcome of their constitutional challenges to warrant the Court's intervention. *Warth v. Seldin*, 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975).

The Court agrees, further, that the alleged loss of Medicare profits Plaintiffs allege is not outside the "zone of interests"

the Medicare Act is intended to protect. Congress expressly switched to a PPS to create economic incentives for hospitals to provide health care to Medicare beneficiaries more inexpensively and efficiently. *See* H.R.Rep. No. 25, 98th Cong., 1st Sess., 132, *Reprinted in* 2 U.S.Code Cong. & Ad.News 143, 219, 351 (1983); 49 Fed.Reg. 1, 301–302. The single greatest incentive created by the PPS is the hospital's right to keep all profits they earn by providing health services to Medicare beneficiaries for less than the Medicare reimbursements to which those services entitle them. Sen. Rep. No. 23, 98th Cong., 1st Sess., 47, *Reprinted in* 2 U.S.Code Cong. & Ad.News 143, 147 (1983). If that incentive is jeopardized, the health of the PPS—and with it Congress' intent to lower health care costs—is threatened. The hospitals' right to keep Medicare profits is therefore a critical element of the PPS, and falls within the zone of interests protected by the Medicare Act.

■ Finally, the Court finds no merit in Defendants' argument that Plaintiffs' Counts II and III, alleging violations of the Supremacy Clause of the U.S. Constitution, must fail because the Medicare Act affords Plaintiffs no private cause of action. Plaintiffs' claims do not arise under the Medicare Act, but under the Supremacy Clause. Plaintiffs do not seek to enforce the provisions of the Medicare Act itself. They seek to halt enforcement of a state statute they believe impinges upon the Medicare Act and their rights under it. They are entitled to invoke the Supremacy Clause to assist them in doing so, even if the federal statute they address affords no private cause of action. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *Western Airlines, Inc. v. Port Authority of New York and New Jersey*, 817 F.2d 222 (2nd Cir. 1987).

The Court therefore finds that Plaintiffs have standing to raise the claims in their

---

**9.** Plaintiffs have standing if their Complaint falls within the "zone of interests" protected or regulated by the statute in question. *Valley Forge Christian College v. Americans United for* *Separation of Church and State*, 454 U.S. 464, 474–475, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982).

Complaint, and that the Court may properly exercise subject matter jurisdiction over this action.

*III. Abstention*

■ Defendant next claims that this Court should dismiss Plaintiffs' action because abstention is warranted. The Court agrees. Five actions challenging provisions of the MHCFC Act are currently pending in Maine state courts, four of which involve Plaintiffs in this action. Three of the five actions raise issues identical to those raised here.[10] Abstention is appropriate where state court determination of state law may obviate the need to address federal constitutional questions. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Further, since Plaintiffs filed their Complaint, the Maine State Legislature has amended the Act twice, permitting adjustments for professional fees incurred in successful appeals of Commission decisions, and correcting shortfalls in annual revenue limits.[11] A third and more important amendment, adopted June 25, 1987, terminates the Commission as of October 1, 1989, unless the full Legislature votes to continue its existence beyond that date.[12] This same amendment created a 17–person committee to assess the effectiveness of Maine's current health care regulation system, including the MHCF Commission, and determine where change is essential.

In its most recent session, the Legislature addressed twelve other bills that would significantly change the Act. One bill proposed to remove donor restricted gifts from the list of income sources the Commission may consider in calculating a hospital's annual revenue limits.[13] At least three of the remaining bills proposed to alter significantly the process by which annual revenue limits are calculated.[14] Some of these bills have been withdrawn. Others have been held over for consideration in the next legislative term. Regardless of the disposition of the individual bills, however, the cumulative legislative attention being addressed to the issue is substantial.

The Court is unwilling to become enmeshed in a regulatory web that the Maine Legislature and courts are so actively attempting to untangle themselves. Maine's hospital cost control system is a complex and specialized matter of substantial public concern. The Court's intervention at this juncture would simply disrupt state efforts to craft a coherent state policy, and is therefore inappropriate. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), quoted in *Colorado River,* 424 U.S. at 813–815, 96 S.Ct. at 1244–45.

Plaintiffs claim abstention is inappropriate on Counts II and III of the Complaint, which allege that the MHCFC Act is preempted by the federal Medicare Act and therefore violates the Supremacy Clause. A well-founded, facially clear preemption claim can make abstention inappropriate; if the state statute at issue is preempted by federal law, the basic reason for abstaining —avoiding needless federal court intervention into important matters within the state's jurisdiction to regulate—is lacking. *Aluminum Co. v. Utilities Commission of the State of North Carolina,* 713 F.2d 1024 (4th Cir.1983).

---

10. 1. *York Hospital v. Maine Health Care Finance Commission,* No. CV–86–55 (Me.Super. Ct., Kenn.Cty.);
2. *Bath Memorial Hospital v. Maine Health Care Finance Commission, et al.,* No. CV–86–191 (Me.Super.Ct., Kenn.Cty.);
3. *Mount Desert Island Hospital v. Maine Health Care Finance Commission,* No. CV–87–86 (Me.Super.Ct., Kenn.Cty.);
4. *Mercy Hospital v. Maine Health Care Finance Commission,* No. CV–86–526 (Me.Super.Ct., Kenn.Cty.);
5. *Maine Medical Center v. Maine Health Care Finance Commission,* No. CV–87–380 (Me.Super.Ct., Cum.Cty.).

11. 22 M.R.S.A. § 396–D(9)(D) and P.L. 1987, Ch. 51 (effective April 15, 1987).

12. 22 M.R.S.A. § 400.

13. L.D. 590 (113 Legis.1987).

14. These are:
1. L.D. 162 (113 Legis.1987) (Authorization for adjustments to base year budgets);
2. L.D. 588 (113 Legis.1987) (Quarterly adjustments of financial requirements); and
3. L.D. 1033 (113 Legis.1987) (Method of calculating bad debt revenue deduction).

■ For preemption claims to make abstention inappropriate, the conflict alleged between state and federal law must be apparent from the pleadings. If the preemption is unclear, or there exists no clear conflict, abstention is appropriate despite the preemption claims. *Id.*

Plaintiffs claim, first, that the MHCFC Act contravenes federal Medicare policy by constructively depriving Plaintiffs of Medicare profits. It is clear, as the Court has discussed, that Congress intended to use the prospect of Medicare profits as a strong economic incentive for hospitals to operate more efficiently and inexpensively. It is not clear from the pleadings, however, that the MHCFC Act contravenes that intention.

Plaintiffs claim that the Act deprives them of their Medicare profits by counting those profits among the sources of income available to satisfy their annual financial requirements. This, Plaintiffs' claim, directly reduces the portion of their annual requirements they can derive from other sources, chiefly third-party payors. They claim the Act essentially uses the hospitals' Medicare profits to reduce the amount of money third-party payors' must contribute to the hospitals' annual financial requirements, rather than increasing the overall capital available to the hospital in the year the profits are earned. This, they claim,

deprives them of the benefit of profit-making and destroys their incentive for earning profits in the first place. They claim that destroying the incentive for profit-making contravenes congressional Medicare policy.

The Court is uncertain, however, whether Plaintiffs have properly characterized either the operation of the MHCFC Act or its effect on whatever profits they earn under Medicare's PPS. As Defendants point out, the Act merely recognizes Medicare profits, as it recognizes other sources of income, in calculating each hospital's annual revenue limits. It does not affect the size of the profits earned, or dictate how each hospital spends its profits once it earns them. The Court appreciates that in recognizing Medicare profits as a source of income the Commission may readjust a hospital's revenue calculations. But the Court is unwilling at this juncture to label such readjustment "deprivation" of Medicare profits.

Plaintiffs claim, next, that the Medicare Act's waiver provision manifests a clear congressional intent to occupy the field of Medicare reimbursements. The waiver provision allows states, subject to the federal approval, to opt out of the Medicare reimbursement system by establishing a reimbursement system of their own.[15] Plaintiffs argue that this provision requires states to seek federal approval—a "waiver"—before regulating Medicare reim-

---

**15.** 42 U.S.C. § 1395ww(c)(1) reads, in pertinent part:

The Secretary may provide, in his discretion, that payment with respect to services provided by a hospital in a State may be made in accordance with a hospital reimbursement control system in the State, rather than in accordance with the other provisions of this title, if the chief executive officer of the State requests such treatment and if:

(A) the Secretary determines that the system ... will apply (i) to substantially all non-Federal acute care hospitals ... in the State and (ii) to the review of at least 75 percent of all revenues or expenses in the State for inpatient hospital services [ ];

(B) the Secretary has been provided satisfactory assurances as to the equitable treatment under the system of all entities (including Federal and State programs) that pay hospitals for inpatient hospital services [ ];

(C) the Secretary has been provided satisfactory assurances that under the system, over 36–month periods ..., the amount of payments

made under this subchapter under such system will not exceed the amount of payments which would otherwise have been made under this subchapter not using such system;

(D) the Secretary determines that the system will not preclude an eligible organization ... from negotiating directly with hospitals with respect to the organization's rate of payment for inpatient hospital services; and

(E) the Secretary determines that the system requires hospitals to meet the requirements [of other provisions of this title].

The Secretary cannot deny the application of a State system under this subsection on the ground that the State's hospital reimbursement control system is based on a payment methodology other than on the basis of a diagnosis-related group or on the ground that the amount of payments made under this subchapter under such system must be less than the amount of payments which would otherwise have been made under this subchapter not using such system.

bursements in any fashion. The Commission has not sought or been granted such a waiver.

Plaintiffs argue that the Commission's regulation of Medicare reimbursements, in the absence of a waiver, thwarts congressional intent and is therefore preempted. The Court disagrees, for three reasons. First, the Court has examined the legislative history of the waiver provision and does not agree that it manifests a congressional intent to occupy the field of Medicare reimbursement, or to circumscribe state involvement in reimbursement control. On the contrary, the waiver provision was included to permit federal Medicare administrators "to take advantage of effective alternative reimbursement systems" already implemented or under implementation in the states. Legislative History, P.L. 97–248 ("Tax Equity & Fiscal Responsibility Act"), 1982 U.S.Code Cong. & Ad.News pp. 781, 1197. Drafters of the provision "*expect* the Secretary to approve such systems if they meet the criteria set forth in the provision." *Id.* p. 1202 (emphasis added).

This, to the Court, does not show a congressional intent to shut states out of reimbursement regulation. On the contrary, it manifests an intent to encourage state involvement in reimbursement control within the broader context of hospital cost containment, which both Congress and the states share as a critical public policy objective. House Report 98–25 at 147.

Second, even if Congress did intend to make federal approval a prerequisite to state control of Medicare reimbursements, the Court is not convinced—to the degree of certainty required for it to address these claims on the merits instead of abstaining —that the MHCFC Act is a reimbursement control system within the meaning of the waiver provision. The Act clearly does not set up a comprehensive alternative system for reimbursing hospitals that serve Medicare beneficiaries. At best, it may constructively affect Plaintiffs' enjoyment of profits they earn under Medicare's PPS. And it does this, if at all, as one portion of a broad state system designed to contain hospital costs. This, in the Court's mind, does not raise the Act to the status of

"reimbursement control system" to which the Medicare waiver provision applies.

Finally, even if Congress intended to foreclose all state regulation of Medicare reimbursements, as Plaintiffs claim, the Court is not satisfied that the MHCFC Act does, in fact, "regulate" the reimbursements Plaintiffs receive under Medicare's PPS. As suggested, the Act does not alter the size of the reimbursements the hospitals receive, nor does it control the hospitals' allocation and distribution of reimbursements after they have been paid. Mere recognition of reimbursements, and uncertain or indirect impact upon them, especially within the context of a comprehensive state program to limit hospital cost increases, may not constitute regulation of the sort Plaintiffs claim Congress intended to discourage.

For these reasons, the Court finds no clear, facial conflict between the MHCFC Act and the Medicare Act. Plaintiffs' preemption claims are therefore insufficiently meritorious to outweigh what the Court considers compelling reasons favoring abstention. *Aluminum Co. v. Utilities Commission of the State of North Carolina, supra.*

Accordingly, the Court hereby abstains from adjudication of the issues generated by Plaintiffs' Complaint. It is ORDERED that the Complaint be, and it is hereby, DISMISSED without prejudice.